Very well, Ms. Sattler, we'll hear from you first. Thank you, Your Honor. May it please the Court, my name is Meryl Sattler and I represent the appellant Travelex Insurance Services, Inc. This Court should reverse the District Court's decision and remand this matter for trial for three primary reasons. First, the District Court incorrectly concluded that the 2008 non-compete agreement between Ms. Barty and Travelex superseded by a 2016 agreement that was never executed and did not go into effect. If that agreement never went into effect, it could not have terminated the earlier 2008 contract. Additionally, by the time the 2016 agreement was presented to Ms. Barty, the 2008 non-compete agreement, she had been employed by Travelex for over eight years under that agreement. That period of her employment provided more than sufficient consideration for the 2008 non-compete. There was therefore no basis for concluding that that agreement was superseded by the later proposal. Second, Ms. Barty's claim that the statute of frauds, as far as enforcement of the agreement in this case, is based on disputed material facts that cannot properly be resolved at the summary judgment stage. Third, contrary to Ms. Barty's claims, the agreement is enforceable under New York law regardless of whether she was terminated for or without cause. The line of cases that Ms. Barty relies on for the principle that New York courts will not enforce a non-compete when a party is terminated without cause is actually related specifically to the employee choice doctrine. The employee choice doctrine does not apply in this case. Travelex has never relied on it in this case. The touchstone under both New York and Nebraska law is whether the scope of the non-compete was reasonable. In this case, it was. This is a narrow provision. It does not prevent Ms. Barty from practicing in the industry generally. It doesn't even prevent her from competing with Travelex. Aside from her requirement that she may not solicit clients or prospective clients of Travelex with whom she had personal contact in the two years prior to her employment. That provision is narrowly tailored in order to ensure that she's not taking advantage of Travelex's goodwill in pursuing clients who she became acquainted with while at Travelex. Under both New York and Nebraska law, that is a reasonable provision that should be enforced and it should have been enforced in this case. What are you asking us to do? You say the reasons the district court gave were wrong. The appellee argues several alternative grounds that I gather were raised in the district court. At least some of them were and were not passed on. What is your proposed disposition of this appeal? Yes, your honor. Our proposed disposition is for the court to reverse the decision of the district court. We believe that decision was incorrect. Both the outcome of the decision and the reasoning of the decision. We believe the matter should be remanded back to the district court. I believe there's some additional discovery that needs to take place because this was an early motion for partial summary judgment. The other claims were dismissed via a stipulation of dismissal with prejudice. That's how it came up to this court. In any event, the case needs to go back to the district court. I believe additional discovery may need to take place and I believe that the case should be tried because it turns on disputed issues of material fact that simply can't be resolved at the summary judgment stage. So there was no motion for partial summary judgment from your client? You were just resisting the motion from Barty? Correct, your honor. Barty moved for partial summary judgment. She's argued that the agreement is not enforceable. She's argued that she did not ever sign the agreement. As we stated in our brief, there's a substantial amount of evidence that Travelex presented in this case to show that the agreement was signed. Admittedly, Travelex was not able to produce the signed agreement itself. The explanation for that was provided in the record and I believe touched on in our brief. But essentially, after the agreement had been presented to Ms. Barty and she admits that it was presented to her, she says she never signed and returned it. But her offer letter specifically says signing that agreement is a condition of her employment and she continued to be employed by Travelex. Several months later, she actually sent an email to the HR department at Travelex and requested a copy of her non-solicitation agreement. That email is in the record. In response to that, Travelex pulled the agreement to fax it to her. Unfortunately, the testimony was that at some point it did not end up back in her file and so we were not able to locate the signed copy of the agreement. But given the amount of both testimony and documentary evidence establishing the existence of the signed contract, there is at the very least a genuine issue of material fact that should be turned over to the trier of fact to determine whether or not that agreement went into effect. Do you agree that New York law governs the non-compete issue? We believe that New York law governs the non-compete issue, Your Honor. Yes, there is a choice of law provision in the contract that says that New York law applies. And that's certainly our position. Our position is that New York is infamous among state courts for having so many opinions. Thank you for the laugh, that's certainly true. But my point is, what's the best case? Is Post the best case by the highest court of the state of New York? Well, Your Honor, so Post is a case that was decided based on the... My question is simpler. My question is simply, is Post, it's the only one I see here, maybe Morris, that is decided by the highest court of the state. Is that correct? Your Honor, Morris is decided by the highest court of the state and Morris actually cautions against over-reading Post beyond its holding. So if you're looking specifically for New York Court of Appeals, we believe that Morris is more helpful on that point than Post. Additionally, the Sixth Circuit case recently in Hall, relatively recently, explains the distinction and why the employee choice doctrine is actually an exception to New York's reasonableness requirement. And so if you're not talking about trying to get around the reasonableness requirement, which is not what happens here, the with or without cause determination is actually, it's not necessary. The question is whether it's reasonable. So the answer to my question is we think there are two, it's Post and Morris, right? Post and Morris, Your Honor, yes. By the highest court, and I do know what the Sixth Circuit says. I thought Morris was a Second Circuit decision. Am I looking at the wrong Morris? Morris v. Schroeder Capital Management? I apologize, Your Honor, yes. U.S. Court of Appeals for the Second Circuit. I have an 859 Northeast 2nd with Morris v. Schroeder. Is it just an error in the memo? Sorry, go ahead. It could be two decisions, I guess. No, unlikely. Proceed, though, counsel. Your Honor, additionally, I did want to bring this court's attention to a Southern District of New York opinion that was decided after the briefs were submitted in this case. And it essentially applies the same reasoning as was applied in the Sixth Circuit. And that case is Kelly-Hilton v. Sterling Infosystems. It's 426F73D49. And again, that was just decided after the briefs were submitted in this case. So it is not cited in our brief. Do you think it's important, or would you please send us a letter under Rule 28J so we have the citation? Yes, Your Honor, I'll submit the supplemental authority letter under 28J, yes. But essentially, the Sixth Circuit's reasoning in Hall is... They said, under New York law, the provision must be reasonable. If what you're doing, however, is telling the employee either comply with the non-compete or you're going to lose post-deployment benefits, that's an exception to reasonableness, so you may be able to enforce an agreement that otherwise would be unreasonable. And so it makes sense that if an employer is trying to take advantage of that exception, that perhaps the with-to-without clause would come into effect. But here, it's just simply not an issue. Additionally, Ms. Barty was terminated for cause. She was terminated because she refused to comply with the condition of her continued employment. Travelex remained willing to employ her. It wanted to continue to employ her, but she would not comply with the condition of her employment. So it's also the case that we do not believe that she was terminated without cause. We believe she was terminated with cause. And, you know, the provision here, it's a very reasonable one. As I said before, it's narrowly tailored to ensure that Travelex's interests are protected in terms of its goodwill. It's intended to prevent an employee from turning around and using Travelex's advertising and goodwill to adverse to Travelex's interests for just a very short period of time. We're not talking about an agreement here that says you can't compete with Travelex or that would prevent her from getting another job or practicing in the industry. It's really a very narrowly tailored agreement, and we believe that it's enforceable and that it absolutely should have been enforced in this case and that there, therefore, was no basis for granting summary judgment. And unless there are any additional questions, I would like to reserve the remainder of my time for rebuttal. You may. Thank you for your argument. Thank you. Mr. Falson, we'll hear from you. Good afternoon. May it please the Court. I am Mark Falson. I'm an attorney with Remboldt-Lutte in Lincoln, Nebraska, and our firm represents aptly Lynn Barty in the present matter. In the present case, the appellant, Travelex Insurance Services, has sued our client, Lynn Barty, its former at-will employee, seeking to enforce an alleged agreement that simply does not exist. The burden of proving the existence of a contract rests on the party seeking to enforce it. The appellant in this case has not met and cannot meet its burden, and the district court's decision granting Ms. Barty summary judgment should be affirmed. First, I will briefly address some of the material facts to the extent not addressed by opposing counsel. Second, I will attempt to address some of the arguments raised by opposing counsel in her brief as well as today. Finally, should time permit, I will address one of the adverse consequences of adopting the appellant's position in this case and reversing the district court's order. First, some of the undisputed material facts. In January 2008, Ms. Barty was presented what we'll call Exhibit 1 in this agreement, the alleged agreement, to be entered into with a different entity, Travelex America, Inc., not the appellant. The alleged agreement, which did not modify Ms. Barty's status as an at-will employee, provided for a one-year period following termination of her employment that she would not solicit nor do business with any existing or prospective customer of Travelex. It also had a one and possibly a three-year provision that prevented her from soliciting Travelex employees for employment. And finally, it had a confidentiality provision that had no duration and was in perpetuity. The appellant admits that it does not possess a copy of a signed copy of the alleged agreement. That's a disputed issue of material. Counsel, whether there's an agreement, that's surely a disputed issue of material fact. If that's material, there shouldn't be a summary judgment. I respectfully disagree, Your Honor. And a direct line of point, if I can, would be DAG Jewish directories, which we cited to and discussed in our brief. Yeah, but go slowly with me. Yeah, I gotcha. Your client sent an e-mail back acting like it existed. Gosh, that's almost enough in a common law and normal court proceeding to find an agreement. You know the e-mail I'm talking about. Yeah, yeah, I respectfully disagree. Again, reading the testimony of Ms. Partee, her boss, Mr. Ambrose, told her to reach out to the HR director to see what her agreement said. And so she simply sent an e-mail saying, again, send me whatever agreements I have. She is not an attorney and was using the terms that were provided to her by Mr. Ambrose, who was her boss at that particular time. Like credibility and witnesses and the HR director's in on this. Gosh, I think you're making a case that shouldn't be summary judgment. Again, I respectfully disagree, Your Honor. And I would direct the court's attention to the New York case, DAG Jewish directories, which is a 2010 Southern District of New York case. In that particular case, they actually had a signed agreement. They actually, which the defendant denied signing. The plaintiffs produced no witnesses to the actual signing. They even brought in an expert to testify, yup, that resembles the plaintiff's signature. In that particular case, again, the defendant, the former employee, was able to win. On summary judgment? But there has to be some threshold, right? Otherwise, all it takes is for someone to say there was an agreement, I once saw it sometime. That's part of the problem in these non-compete cases. Again, these are not uncommon. Generally, it is in the best interest of the former employer who has had their employee leave to go compete to frustrate their ability to compete, to force them to litigate, to force them to spend time and money litigating rather than competing with them. So what do you do? You allege an agreement existed. Can't find it. No one witnessed the person signing it. The person actually denies signing it. But if you can survive summary judgment on that every time, why not do that in every case? So certainly some unscrupulous employers might consider doing that. And so we respectfully disagree that based upon the facts presented, whether it was not a single witness to her signing it or she unequivocally denies signing it, that, we believe, was appropriate for summary judgment. Was that New York case tried to a jury, though? No, I don't believe so, Your Honor. You mean it was also a summary judgment? No, I'd have to recall the setting in which it was. All right, we'll let you know. We'll look it up. Go ahead with your argument. Sure. So, again, she unequivocally denies signing the agreement. And moreover, in 2016, a transaction occurred in which the appellant was sold to Covermore Group. And in November of 2016, they came to her and said, sign a new agreement. It wasn't just a replication of her existing agreement. They didn't provide her any additional consideration for that agreement. What they said was this, sign this. And, oh, by the way, we're adding another half year on to the term for the non-compete. No additional consideration. And, oh, by the way, we're going to at some point change your bonus program as well. In that instance, Ms. Barty rightfully declined to sign it.  First, the appellant has not and cannot meet its burden of establishing a valid and binding agreement. And the first goes to the issue of lack of mutuality, which is what the district court concluded. Again, lack of mutuality, unless one is bound, unless both are bound, neither are bound. And directly at that point, at least we believe is instructive, is the CIFCO decision, which is cited in our brief. Therein, a company called Selectrons employed the individual defendants, each of whom had signed a non-compete as a condition of employment. Selectrons then sold to CIFCO, and there was no guarantee that they would remain employed. They actually asked them to sign new consulting agreements and to essentially reaffirm these non-competes, which these employees declined to do and ended up leaving to go into competition with their former employer. And CIFCO sought to enforce those non-competition agreements. The court therein granted summary judgment for the individual defendant employees, again, citing post, stating an essential aspect of enforceable restraints on employee mobility is the employer's continued willingness to employ the party covenant not to compete. Again, in this particular case, the sole reason Ms. Barty was terminated is because she refused to agree to a new agreement with a new entity that extended by six months the term of her non-compete. You're right. Let me interrupt you. You're right that the CIFCO case relied on post. But there is a Morris Court of Appeals case by the highest court of New York in 2006, and it makes post sound like it's an employee choice case, which gets you back to what you're getting later. Not what you've gotten, but what you're getting later. What do you say to the so-called employee choice view of New York law by the highest court of the state? Yes, Your Honor. Certainly you've indicated, and commentators would agree, that New York law has been rather inconsistent as it relates to post and what it means. Yeah, but wait. Just focus on the highest court of the state for me. That makes it easier for me to think about. I'm simple. Certainly the most— Just the two cases. Yeah, just post and Morris. Yes. Okay, great. Morris limits post. Yeah, so post was not limited, at least in its express terms, to the employee choice doctrine. That wasn't necessarily a term that was used, but it certainly, in its facts, dealt with an instance where some former Merrill Lynch employees were essentially given a choice. Either compete. If you compete, you forego any type of pension benefits you may have been entitled to. The most recent case from the highest court in New York has really tried to limit post to those facts. That is correct. That's Morris, right? Go ahead. That is correct. That being said, certainly there are other courts that have taken that interpretation and perhaps still state that post goes beyond that. And we believe, in this case, that it's really, again, the underlying rationale of post, which applies in this case as well. The employer in post sought to use the agreement offensively. Terminate the employee without cause, leaving them with a choice. Compete and forego your benefits, or don't compete and you get your benefits. Here, Travelex terminated Ms. Barty because she would not agree to a new, more restrictive agreement with a different entity, at which time they offered her no additional consideration for that agreement. When Ms. Barty declined, they fired her and then brought the present action. Like post, if the appellate's position is adopted, an employer can only compel a material change and then not compete. Sign this or be fired. Now it's 18 months, it's 24 months. Sign it or be fired. And again, what I think the district court was attempting to do was to use the rationale behind post, relative to these changes that were requested by the employer, to say that essentially that did away with the benefit of the bargain. Essentially, the bargain that was agreed to between the parties relative to the employment, that went away when they presented her with a new agreement, with different terms, with no additional consideration with the new entity. And so we do believe that the underlying rationale of post, even if not specific to some type of post-employment severance agreement, or severance benefits, or deferred comp agreement, we do believe that the underlying rationale of post does in fact apply to the present case. Moreover, we do believe it is relevant, as the district court noted, that we're talking about two different entities, especially when we're talking about a mutuality of obligation. Again, the entity that was the employer of the alleged agreement, which my client denies signing, ceased to exist as a result of its sale to this cover board group in 2016. That entity, the 2008 agreement, was something called Travel X America. That is not the party in this case, and there are no allegations in the complaint, or in the record, indicating that the rights of Travel X America have been assigned to the appellate in this case. Again, what I think the district court was getting to, relative to part of its mutuality argument, is that it was a different entity that was now asking her to sign this new agreement in 2016. You mean even though the agreement said that it flows to successors and assigns, you say there's no evidence that this new entity was a successor or an assigned? Correct. There's no evidence in the record that Travel X America Inc., which is the new entity, which is the appellant in this case, was the successor or the assigned of prior agreements with Travel X America, which was the entity on the 2008 agreement. The complaint does not allege that either. It's not in the record. Moreover, as we state, as we allege to the lower courts, and as we brought up again in response here in our argument, there is no proof that the agreement was signed. Again, applying the statute of frauds, by its very terms, that agreement could not be performed within one year. We had a confidentiality provision, which went on indefinitely. The non-compete was one year and beyond. The non-solicitation, or at least as it relates to recruiting employees or an anti-rating provision, extended beyond one year. They have to be able to produce a signed writing, which was subscribed to by Ms. Barty. That doesn't exist. Therefore, again, the appellant could not meet its burden in this particular case. Just briefly, once again, touch upon the consequences of reversing. As I had previously mentioned before, if all that is required is for an HR official, whose sole, arguably, one of her responsibilities was to be the custodian of the company's records, says, you know, I didn't see her sign it, but I know when reviewing a file with a whole bunch of other documents she signed, I saw it almost a decade ago. If that's all that's required in order to survive summary judgment, I suspect that this would actually lead to more types of non-compete cases with little or no evidence. At the end of the day, Ms. Barty, a New York resident, found herself being sued in the state of Nebraska on a claim for an agreement she frankly did not sign. And there was no witness that she signed it. For the reasons of the district court, as well as the reasons supported by the record, we respect the request that the decision of the district court granting summary judgment to Ms. Barty be affirmed. Thank you. Do you have any further questions? Thank you for your argument, Mr. Paulson. Thank you. Thank you, Your Honor. I'd like to address a few points that were just made by Mr. Paulson. And the first is, the DAG case that's cited, the fact issues in that case were entirely different than those that are presented here. This is a case involving not just testimony from someone who directly saw the signed agreement and gave detailed testimony about why she remembered seeing it, but there's also documentary evidence. There's an email from Ms. Barty referencing the agreement. There's a facts cover sheet that references the agreement. So the slippery slope kind of argument about the potential consequences of this really just doesn't apply here because the facts here are fairly unique. There is a substantial amount of evidence that this agreement did exist. At the very least, that creates a genuine issue of material fact that should be decided by the trier of fact. With respect to the mutuality argument that's been made, this agreement was presented to Ms. Barty, the 2016 proposed agreement specifically says that she will be continuing her employment. She remained an employee of Travelex Insurance Services, Inc., which was her employer before and after that time period, and that that company was willing to continue employing her. It wanted to continue employing her. She was the party that refused to comply with the condition of that employment. So the idea that there's no mutuality or that Travelex was not providing any kind of consideration for the agreement really just is not correct. Additionally, as I said before, she'd been employed from 2008 all the way until 2016 before any of this happened. So that eight-year period certainly was sufficient consideration to make the agreement enforceable, and she should have been bound by the non-solicitation provision one year following her termination. Do you want to address the question about successors and assigns? Yes, Your Honor. So the question about the entity is, first of all, the fact that the agreement, the non-solicitation agreement itself does say Travelex Americas on it. The offer letter that accompanied it, I can provide the citation to the record on that, I believe. It should be at TA-214 in the appendix, but it references the fact that Travelex America, that she will be working for Travelex Insurance Services Sales Division of Travelex America. Additionally, there's testimony in the record that Travelex Insurance Services was sold to Cover-More, but Ms. Barty remained an employee of Travelex Insurance Services throughout. There's not additional information with respect to this assignment in the record because that issue is not one that was argued before the district court. It's not something that was ever really parsed out. So there is fairly limited evidence in the record on that point, but the fact is that Ms. Barty was an employee of Travelex Insurance Services from 2008 until her termination. So certainly that entity appropriately could enforce that agreement, given the language in the agreement that it endures to the benefit of the representatives, successors, heirs, and assigns. Well, I think you just told us you can't use the assigns, right? Assigns takes an assignment, I think. Your Honor, I don't know. There's no information in the record with regard to the assignment question because it's something that wasn't raised below. So that may be something that could be decided on remand or additional evidence may be available on that. I don't know, but unfortunately there is... What's your position then as to Cover-More? Which category do they come under? I believe they're a successor entity, and potentially an assign as well. But certainly Travelex Insurance Services Inc. remained her employer throughout, and the offer letter that she received in 2016 indicates that. It's not a situation where she was terminated from her employment, and then they were trying to rehire her. She remained an employee throughout, and I see that my time has expired. So unless there are any other further questions. Apparently not. Thank you for your argument. Thank you to both of you.